# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ROBERTO BARAJAS, | No. C10-4089-LTS |
| Petitioner, | (CR09-4002-DEO) |
| vs. | **MEMORANDUM** |
| UNITED STATES OF AMERICA, | **OPINION AND ORDER** |
| Respondent. | |

## *I.     INTRODUCTION*

Before me is Roberto Barajas' 28 U.S.C § 2255 Petition. Doc. No. 1. The Honorable Donald E. O'Brien held several hearings in this case, but passed away before he issued a ruling. The case was subsequently reassigned to me.

## *II.     PRIOR PROCEEDINGS*

Barajas was indicted by the grand jury in the United States District Court for the Northern District of Iowa for one count related to possessing a stolen firearm. CR09-4002-DEO, Doc. No. 2. Barajas entered a guilty plea on June 11, 2009. CR09-4002-DEO, Doc. No. 15. On September 9, 2009, Judge O'Brien sentenced Barajas to four months incarceration. CR09-4002-DEO, Doc. No. 27

At the time of his indictment, Barajas was a citizen of Mexico but a legal resident of the United States. CR09-4002-DEO, Doc. No. 25. He resided in the United States since the age of four, graduated from a Sioux City, Iowa, high school and, for a time, attended a technical college in Sioux City. *Id*. at 8. He was nineteen years old when he was sentenced. *Id*. at 2. His family members continue to live in the United States. *Id*. at 7.

At the change of plea hearing, Judge O'Brien asked Barajas the following question:

> Do you understand – and I don't know this and I'm not recommending this or anything, it's not up to me - do you understand if you enter a plea of guilty, it could affect your residency or the status of your being allowed to stay here; do you understand that?

CR09-4002-DEO, Doc. No. 30, p. 7. Barajas responded that he did understand that. Judge O'Brien told Barajas, "I'm going to assume that you may be allowed to stay in the United States. But you can't take that as any kind of assurance, because I don't have anything to do with that . . . ." *Id*. at 8. At the plea hearing, Barajas' counsel, Patrick Parry, neither mentioned Barajas's immigration consequences nor commented on Judge O'Brien's statements. CR09-4002-DEO, Doc. No. 30.

As set out above, Judge O'Brien sentenced Barajas to four months in prison. CR09-4002-DEO, Doc. No. 27. During the sentencing, Mr. Parry stated that deportation, "although there is no guarantee . . . is very likely . . . ." Doc. No. 32, p. 24. At another point, Mr. Parry requested a variance because Barajas was "probably. . . . going to be sent somewhere that he hasn't lived since he was four years old and lose his schooling and employment and everything for something that carries a penalty of 6 to 12 months. And I think that in and of itself is pretty tough punishment, and I think that the court can consider that extra potential punishment in fashioning a reasonable sentence." *Id*. at 29. Judge O'Brien went on to say,

> I think the biggest thing here, of course, is a matter of being deported. Probation officers tell me that it's not a cinch that he's going to be deported; that because of the nature of the charge and non-severity, really, of the charge, I guess, that he's going to have a right to go before the administrative law judge that works with Immigration and Naturalization Service and that it is possible that he would not be deported. But chances are - I have no way of knowing, but I'm going to conclude, without having a good reason to conclude, that he has at least a 50/50 chance that he may be deported. And if he does - certainly never been to Mexico before - since he was four years old, and it doesn't show that he has any relatives down there,

2

> that he knows anybody, so it is a pretty tough situation sending him there, and the court is keeping that in mind, but is not sure what the outcome is going to be, so it can't draw any important conclusions there either way.

*Id*. at 31. Neither Mr. Parry, the United States Attorney nor the United States Probation Office commented further on Barajas's immigration consequences.

Barajas served his time and was then deported. A review of the relevant deportation statutes in effect at the time of his guilty plea reveals that his deportation was always a certainty. Specifically, 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1101 provides that the term "aggravated felony" includes a firearms offense under 18 U.S.C. § 922(j) - the offense for which the Barajas pled guilty. Finally, 8 U.S.C. § 1182(a)(9)(A)(ii)(II) provides that any alien who was deported due to a conviction for an aggravated felony may never be readmitted to the United States.[1]

On January 22, 2010, Barajas filed the present 28 U.S.C. § 2255 petition. In short, Barajas argued that his counsel was ineffective for failing to warn that he would be deported if he pled guilty. At the time Barajas filed his claim it was unclear if such a failure to warn constituted ineffective assistance of counsel. However, shortly thereafter, the Supreme Court, in *Padilla*, ruled that attorneys have a duty to warn their clients of

---

[1] This was not always the case. As noted in *Padilla v. Kentucky*:

> [w]hile once there was only a narrow class of deportable offenses and judges wielded broad discretionary authority to prevent deportation, immigration reforms over time have expanded the class of deportable offenses and limited the authority of judges to alleviate the harsh consequences of deportation. The 'drastic measure' of deportation or removal . . . is now virtually inevitable for a vast number of noncitizens convicted of crimes.

*Padilla v. Kentucky*, 559 U.S. 356, 360 (2010).

possible immigration consequences of pleading guilty. The question then became whether that decision was to be applied retroactively.

On February 12, 2012, Judge O'Brien entered an order (Doc. No. 22) finding that Barajas' counsel was ineffective for failing to warn Barajas of the immigration consequences of pleading guilty. The Government appealed, arguing that *Padilla* was not retroactive. The United States Supreme Court then held, in *Chaidez v. United States*, 133 S. Ct. 1103 (2013), that *Padilla* is not retroactive to cases on collateral review. *Id*. at 1107. The Court concluded that "*Padilla* … announced a 'new rule,'" *Id*. at 1111, but, "[w]hen [the United States Supreme Court] announce[s] a 'new rule,' a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." *Id*. at 1107. Pursuant to that decision, the Eighth Circuit reversed and remanded Judge O'Brien's order for further consideration. Doc. No. 33.

Judge O'Brien then requested additional briefing. Doc. No. 35. Barajas argued, not surprisingly, that *Chaidez* did not apply to his case. The Government disagreed. Judge O'Brien held a merits hearing on May 15, 2014, and another on July 11, 2014.

## III. STANDARD

Section 2255 of Title 28 of the United States Code provides four general grounds for relief:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post-conviction relief on the

ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to Section 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of Section 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when [petitioners] have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as Section 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (internal quotations and citations omitted).

5

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland*[2] test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to Section 2255 because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); see also *House v. Bell*, 547 U.S. 518, 536–37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id*. (quoting *McNeal v. United States*, 249 F.3d 747, 749–50 (8th Cir. 2001)).

## IV. ANALYSIS

Judge O'Brien has already found that Barajas' trial attorney failed to fully inform him of the immigration consequences of his guilty plea. Judge O'Brien found that this failure to warn should be considered under the *Strickland* standard and determined that trial counsel's failure to warn Barajas constituted ineffective assistance of counsel. Subsequently, the Supreme Court, in *Padilla*, found that failure to warn should constitute

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

ineffective assistance of counsel under *Strickland*, but in *Chaidez* found that the *Padilla* decision was a "new rule." Thus, the only question before me is whether Barajas' claim is barred because it arose before *Padilla* was decided.

A.  *Padilla and Chaidez*

In *Padilla*, the Supreme Court held that when advising a criminal defendant about the consequences of pleading guilty, "counsel must inform her client whether his plea carries a risk of deportation," and that failure to do so is subject to analysis under *Strickland*. 559 U.S. at 374. The Court also recognized that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Id*. at 368. The Court explained that:

> changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

*Id*. at 364 (footnote omitted).

Previously, in *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final," including 28 U.S.C. § 2255 petitions, "before the new rules are announced." *Id*. at 310. The Court reasoned that it is "sounder . . . to apply the law prevailing at the time a conviction became final than . . . to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation." *Id*. at 306 (quoting *Mackey v. United States*, 401 U.S. 667, 689 (1971) (opinion concurring in judgments in part and dissenting in part)).

The decision in Barajas' criminal case became final on October 8, 2009, and the Supreme Court issued the ruling in *Padilla* on March 31, 2010. C09-4002-DEO, Doc.

7

No. 32. Thus, if the *Padilla* rule was a "new rule," *Teague* precludes its application in this case. *Teague* stated that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." 489 U.S. at 301. Stated differently, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id*. "The pertinent inquiry . . . is whether" a Supreme Court decision was "'susceptible to debate among reasonable minds.'" *Chaidez*, 655 F.3d 684, 688 (7th Cir. 2011) (quoting *Butler v. McKellar*, 494 U.S. 407, 494 (1990).

In *Chaidez*, the Supreme Court considered whether *Padilla* announced a new rule and unequivocally held: "This Court announced a new rule in *Padilla*. Under *Teague*, defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Chaidez*, 133 S. Ct. at 1113. Applying *Padilla* and *Chaidez* to the present case, it is clear that Barajas' claim is barred. Barajas' claim arose prior to the Supreme Court's decision in *Padilla*. Because the Supreme Court found that *Padilla* announced a new rule, it is not retroactive and thus cannot be applied here.

### B.    *Barajas's Argument*

Barajas makes a number of arguments to avoid the effects of *Padilla* and *Chaidez*. First, he argues that the *Teague* doctrine does not apply to cases in which a federal petitioner challenges a federal conviction on grounds of ineffective assistance of counsel. (*Teague* dealt with a state court convict challenging his sentence in federal court.) Barajas roots his argument in the fact that the *Chaidez* majority noted that there *may* be a distinction, for *Teague* purposes, between federal petitioners and state court petitioners. The Court stated, in a footnote:

> Chaidez makes two back-up arguments in her merits briefs—that Teague's bar on retroactivity does not apply when a petitioner challenges a federal conviction, or at least does not do so when she makes a claim of ineffective assistance.  Brief for Petitioner 27–39.

8

> But Chaidez did not include those issues in her petition for certiorari. Nor, still more critically, did she adequately raise them in the lower courts. Only her petition for rehearing en banc in the Seventh Circuit at all questioned *Teague*'s applicability, and her argument there—that a "*Teague*-light" standard should apply to challenges to federal convictions—differs from the ones she has made in this Court. See Petition for Rehearing and for Rehearing En Banc in No. 10–3623(CA7), p. 13. Moreover, we cannot find any case in which a federal court has considered Chaidez's contention that *Teague* should not apply to ineffective assistance claims. "[M]indful that we are a court of review, not of first view," we decline to rule on Chaidez's new arguments. *Cutter v. Wilkinson*, 544 U.S. 709, 718, n. 7, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

*Chaidez*, 133 S. Ct. at 1113 n.16. However, Barajas cites no case adopting his argument that the *Teague* analysis should not apply to this case. The Eighth Circuit has applied *Teague* to claims raised by federal prisoners. *See Abraham v. United States*, 699 F.3d 1050, 1052 (8th Cir. 2012). Likewise, other circuit courts addressing the question posed in *Chaidez* have affirmed that *Teague* applies to such claims. *See In re Ifenatuora*, 528 F. App'x 333, 335 (4th Cir. 2013); *United States v. Sanchez–Cervantes*, 282 F.3d 664, 667 (9th Cir. 2002). Accordingly, there is no legal authority upon which I could base a finding that *Teague* does not apply to Barajas' Section 2255 petition.[3]

Next, Barajas argues that Judge O'Brien made a secondary holding in his original decision to avoid a strict application of *Teague*. Specifically, Barajas' points to Judge O'Brien's statement that "in order to avoid fundamental unfairness, uphold principles of equality under the law, and promote principles of finality, new rules, as that term is used

---

[3] Barajas' attorneys make a number of policy arguments about why *Teague* should not apply to federal petitioners in ineffective assistance of counsel cases. (Foremost being that *Strickland* should be the primary mechanism by which ineffectiveness of counsel is judged, and adding a *Teague* barrier tilts the scales too far in favor finality of judgment over defendants' rights to have competent representation.) However, Barajas' attorneys seemingly concede that were I to agree with them, it would be a matter of "first impression." Doc. No. 41, p. 17.

in *Teague*, announced in post-conviction proceedings should be applied to future post-conviction proceedings but should not revive previously denied postconviction petitions." Doc. No. 22, p. 16. Barajas argues that his plea should be set aside on the basis of Judge O'Brien's comment that strictly applying *Teague* to *Padilla*, and thus barring Barajas' claim (as ultimately happened under *Chaidez*), is fundamentally unfair. I find, however, that Judge O'Brien was simply expressing his long-standing opinion that using *Teague's* "new rule" language to block otherwise meritorious habeas appeals is unfair.

At the beginning of the above-quoted section, Judge O'Brien stated: "Though *Padilla* applies to Petitioner's motion, this Court is compelled to discuss an additional, related matter. Namely, there is something fundamentally unfair about a rule of law . . . . which makes habeas relief available to the Petitioner in *Padilla* but denies it to the current Petitioner . . . ." Doc. No. 22, p. 15. Judge O'Brien's point was that the *Teague* framework essentially benefits the one petitioner who manages to get his or her case to the Supreme Court over all other similarly-situated petitioners. The applicant before the Supreme Court – in this case Jose Padilla - received relief because his case got to the Supreme Court first (Padilla's conviction was ultimately vacated in *Padilla v. Com.*, 381 S.W.3d 322 (Ky. Ct. App. 2012)). But Barajas, who in all material ways was similarly situated to Padilla, must suffer permanent exile from the United States. While it is easy to understand why Judge O'Brien considered this scenario to be unfair, his expression of that sentiment was dicta, not an alternate holding under which Barajas is entitled to relief.

Finally, Barajas argues that his case is a material misrepresentation case, not a failure to inform case. In a failure to inform case, the attorney tells his or her client nothing, or at least not enough, about the potential collateral consequences of a guilty plea. In a misrepresentation case, the attorney gives his or her client the wrong information about those consequences. If Barajas' case is a failure to inform case (and it is), then the above-discussed *Padilla–Teague–Chaidez* analysis applies and his claim is

barred. However, the question is more complicated if Barajas' received misrepresented information or actively-wrong advice.

In a line of cases predating *Padilla*, the Second, Ninth and Eleventh Circuits applied *Strickland* to cases in which attorneys gave their clients the wrong advice regarding the consequences of their plea. *See, e.g., Sehjpal v. United States*, 2009 WL 3242043 *4-5 (E.D. Mo. 2009) (explaining the legal history of the distinction between failing to advise cases and misrepresentation cases); *United States v. Chan*, 792 F.3d 1151, 1158 (9th Cir. 2015) (finding the distinction between failure to advise cases and misrepresentation cases survived *Padilla/Chaidez*). Barajas argues that his case is a material misrepresentation case, that *Padilla* therefore does not apply, and that I should use the *Sehjpal/Chan* rational to find Mr. Parry provided deficient representation under *Strickland*. There are several issues with this argument.

First, the distinction, post-*Chaidez*, between failure to advise cases and misrepresentations cases is not universally recognized. *See Chavarria v. United States*, 739 F.3d 360, 363 (7th Cir. 2014) (finding no distinction between failure to inform cases and misrepresentation cases and applying the *Padilla–Teague–Chadez* rational to a misrepresentation case).[4] Second, while the Eighth Circuit seemingly has not ruled on the distinction between failure to inform and misrepresentation, it did expressly direct this court to consider *Chaidez* on remand. Doc. No. 33. Finally, and most importantly, there is no doubt that this is a failure to inform case. Judge O'Brien, who conducted the evidentiary hearing, found credible Mr. Parry's testimony that Mr. Parry told Barajas that he would "almost certainly" be deported but did not tell Barajas that he would be "permanently" deported. Doc. No. 22, p. 19-20.

---

[4] *Chavarria* finds strong support in the Supreme Court's ruling in *Padilla*, because, in that ruling, the Supreme Court seemingly dismissed an opportunity to limit its decision to misrepresentation cases, stating, "[a] holding limited to affirmative misadvice would invite two absurd results . . ." *Padilla*, 559 U.S. at 370.

There was no misrepresentation in this case. Mr. Parry failed to tell Barajas the full extent of the collateral consequences (that his permanent deportation was certain) but Mr. Parry did not actively misrepresent those consequences, such as by telling Barajas he would be able to stay in the United States or that his removal would not be permanent. For all of these reasons, I find that the *Padilla–Teague–Chadez* analysis controls and, therefore, that Barajas' petition must be denied.

## V. CERTIFICATE OF APPEALABILITY

Barajas must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. See *Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the Supreme Court reiterated in *Miller–El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [the petitioner] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this case, Barajas has made a substantial showing on at least one issue – whether or not *Teague* should apply to federal petitioners who are alleging ineffective assistance of counsel. While the current case law does not support Barajas' argument, the Supreme Court seemingly solicited argument on this issue in *Chaidez* and the Eighth Circuit has not yet had the opportunity to review the issue after *Chaidez*. Reasonable jurists could debate an issue after the Supreme Court has explicitly acknowledged that it may have

merit. Accordingly, Barajas has made the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). As such, I will grant a certificate of appealability.

## VI. MOTION TO WITHDRAW

During the course of this case, Barajas has been represented by both Rockne Cole and his former associate, Bram Elias. However, Mr. Elias withdrew from the case after leaving Mr. Cole's firm to take a job at the University of Iowa. On February 25, 2016, Mr. Cole filed a motion to withdraw (Doc. No. 64), stating that Mr. Elias would like to resume representation of Barajas. I will grant that motion. Mr. Elias will represent Barajas on his likely appeal in this case.[5]

## VII. CONCLUSION

For the reasons set forth herein, Barajas' motion under 28 U.S.C. § 2255 is **denied** in its entirety. This case is dismissed. However, Barajas is hereby granted a certificate of appealability. Mr. Cole's motion to withdraw is **granted**, as set forth above.

---

[5] Mr. Elias' wife, Stella Elias, is also a professor at the University of Iowa. She is a specialist in immigration law and sat in on (but did not participate in) some of the oral argument before Judge O'Brien. According to Mr. Cole's motion to withdraw, Mr. Elias plans to handle Barajas' case though a legal clinic at the University of Iowa, where he will have access to both his wife's expertise and a team of legal students.

**IT IS SO ORDERED.**

**DATED** this 29th day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE